## Commonwealth v. LaRosa

*H. Vance Cottom*, district attorney, for Commonwealth.
*A. Cavalcante*, for defendant.

CARR, J., May 13, 1941.—Mike LaRosa, upon whose farm marihuana plants were found under cultivation, was convicted upon an indictment charging him with having in his possession and under his control the drug marihuana, in violation of the Narcotic Drug Act of July 11, 1917, P. L. 758, as amended by the Act of May 22, 1933, P. L. 905, 35 PS §851. He has moved in arrest of judgment and for a new trial, contending that the growing marihuana plant is not a drug within the meaning of the act, and that its possession is not prohibited.

The first section of the act defines the word "drug" to include: (*a*) Opium; (*b*) coca leaves; (*c*) marihuana; (*d*) any compound or derivative of opium, coca leaves, or marihuana; (*e*) any substance or preparation containing opium, coca leaves, or marihuana; or (*f*) any substance or preparation containing any compound or deriva-

tive of opium, coca leaves, or marihuana. Section 4 of the act declares that no person shall have in his possession or under his control, or deal in, dispense, sell, deliver, distribute, prescribe, traffic in, or give away any of said drugs.

Defendant owns and farms, in a sparsely-populated section of Nicholson Township, a tract of land containing about fifty acres, remote from any traveled road and accessible only by a lane leading through fields and woods. In a triangular piece of ground a quarter to a half-acre in size, approximately two hundred yards from defendant's dwelling house, and concealed on two sides by tall growing corn, and on the other by a woods, officers visiting the place in August 1940 discovered 2,000 mature marihuana plants, bearing leaves and pods full of seeds, many as much as 14 feet high. On the ground, between rows, lay cut and wilted stalks from which the leaves and pods had been stripped. Back of the barn and hidden by a woods, a second field of six acres was found, in which 150,000 plants had reached a height of eight feet. The plants growing in both fields were identified by a government chemist and other agents of the Federal Bureau of Narcotics as marihuana.

There was testimony that the harvested marihuana plant has a value for narcotic use of $25 a pound, at which rate defendant's crop could have been marketed for $1,-900,000. It was sufficient to make 11 billion cigarettes, retailing at 25 cents each, or a total of $2,750,000,000.

Defendant told the officers that early in April he had been visited by a man calling himself "Dominick," who proposed to him that he plant some seeds to raise more seeds for canary bird food, and that this stranger returned later with a 25 pound sack of seeds and gave him $25, promising him "lots more money in the fall when he comes back to get the plants." Defendant also informed the officers that he had planted the seeds the last week in April, and had cultivated the plants twice during the summer.

The precise contention of defendant is that the word "marihuana" as used in the Drug Act signifies a narcotic preparation, and not a growing plant, and must be limited to substances prepared from the plant and ready for use, so as not to prohibit possession of the plant in its natural state.

Webster's New International Dictionary defines the word "marijuana" as "(a) the wild tobacco *Nicotiana glauca;* (b) the hemp (*Cannabis sativa*); also, its dried leaves and flowers, which are smoked in cigarettes."

The New Standard Dictionary defines it as follows: "Marihuanna, . . . *n.* [Mex.] A narcotic plant reputed to cause insanity in persons drinking an infusion of its leaves or smoking them."

"Marijuana" is referred to in the Encyclopedia Britannica (14th ed.) in the article entitled "Hemp", which it defines as "an annual herb (*Cannabis sativa*) having angular rough stems and deeply lobed leaves. The base fibres of *Cannabis* are the hemp of commerce, but the products from many totally different plants are often included under the general name of hemp. . . . Hemp is now cultivated for fibre production in Russia, Italy, Jugoslavia, Rumania, Hungary, Poland, Spain, Belgium, France, Turkey, China, Japan, the United States and Chile. Other forms are cultivated for the narcotic drug cannabin, known in different countries as hasheesh, bhang, gunga, charras, kif and marijuanna, in India, Arabia, Africa and Mexico."

The Act of May 26, 1939, P. L. 243, 3 PS §241, which is considered hereafter, refers to "the weed known as marihuana".

Thus, in common use, the word "marihuana", which is not a scientific name, is applied both to the plant and to the drug that it contains. The deleterious, even vicious, qualities of the plant which render it highly dangerous to the mind and body, upon which it operates to destroy the will, to produce imaginary delectable situations, and gradually to weaken the physical powers, reside in a

sticky resin of great narcotic power that pervades the entire plant, being contained most abundantly in the leaves and flowering tops, and to a lesser extent in the twigs and stalks. Although it is not customary to harvest the crop for narcotic use until it reaches the flowering stage, the narcotic resin is present in the young plants as soon as they appear above the ground. For use as a drug the growth requires no preparation. In India and Africa it is largely chewed; in Turkey it is frequently mixed with tobacco. For the American market the leaves and seeds are stripped from the branches, dried, crushed, and rolled into cigarettes.

Since all parts of the growing plant contain the narcotic resin and can be used to produce the narcotic effect without the addition of any chemicals or any special preparation, it is virtually as unsafe to permit the plant to be possessed in the growing form as to permit its possession in the form of cigarettes and tobacco, so readily and easily may it be converted into these forms. The language of our statute therefore admits of no distinction between the growing plant and the drug. The prohibition against the possession of marihuana must include the plant from which the drug has not been extracted. To possess the growing marihuana plant is to possess the drug marihuana.

Counsel for defendant points, however, to the Act of May 26, 1939, P. L. 243, 3 PS §241, which makes it the duty of persons holding land upon which any Canada thistles or weeds commonly known as Canada thistles or cichorium intybus, the weed commonly known as chicory or succory or blue daisy, or the weed known as marihuana may be growing, to cut the same so as to prevent such weeds from going to seed and the seed of the same from ripening. He argues that this act impliedly permits these plants to be grown to the point of seeding, and that if defendant is guilty of any offense it is only for a violation of this act in not cutting the plant in time. The act cited is entitled "An act to provide for the destruction, and to

prevent the spread of Canada thistles, chicory and marihuana, and imposing certain powers and duties upon supervisors and constables in relation thereto." Its purpose is to extirpate the noxious weed from our soil. Wherever it may be found growing, it is to be cut, so as to prevent it from seeding and thus to stop all future growth. By no rule of construction can this preventive provision be taken as a license to impregnate the soil anew with seeds from some other source. An interpretation that would defeat the manifest purpose of a statute cannot be accepted. The Act of 1939 cannot be held to restrain the force and effect of the Narcotic Drug Act. They are cognate acts, having as their common object the protection of the public health, safety, and morals.

### *Order*

And now, May 13, 1941, the motion ex parte defendant for a new trial is overruled, and a new trial is refused; the motion ex parte defendant in arrest of judgment is overruled, and defendant is directed to appear for sentence.